CONLEY *et al. v.* ROGERS *et al.*

No. 6672. SEPTEMBER 20, 1929.

*C. L. Cowart,* for plaintiffs.

*A. S. Way, H. H. Elders,* and *Eason & Everitt,* for defendants.

RUSSELL, C. J. L. P. Conley, D. L. Durrence, and C. B. Collins filed an equitable petition against R. J. Rogers, H. J. Brewton, D. B. Summerford, and J. Madison Smith, constituting the board of trustees of the Reidsville school district. The petitioners alleged that an order had been passed by the board of education of Tattnall County, changing the district lines between Reidsville school district and Hughland school district so as to include in the Reidsville district a portion of the territory which had been a part of the Hughland district, including the petitioners and their property in the territory added to the Reidsville district. It is alleged that prior to the action of the county board of education the Reidsville district was badly in debt; that on January 1, 1922, it had issued bonds in the sum of $30,000, one bond maturing each year for 30 years; that at and before the issuance of said bonds a tax was levied on the property of said district as it then existed, without the addition of the territory from the Hughland district, sufficient to pay the interest on said bonds and to retire the same as they became due; that said tax levy is still of force and constitutes a burden against the property that is embraced in the district as it existed in 1922, but is not a burden against the territory transferred by the county board of education from Hughland district; that the schoolhouse in the Reidsville school district for which the bonded debt was incurred was burned in December, 1927, and the defendant trustees collected $21,000 of insurance carried on the building; that the trustees have used approximately $5000 of the insurance money for the purpose of paying past-due bonds, and now are endeavoring and threatening to use the balance of the insurance money which they have in hand for the purpose of paying off and buying in the outstanding bonds or so many of them as they can, which contemplated action is without authority of law. On information and belief the petitioners allege that the defendant trustees have illegally paid to the Tatnall Bank about $3000, which is alleged to be a debt or debts illegally contracted by the defendants, and which did not constitute a valid obligation against the district. "That the total amount of insurance money collected by

the defendants from the burning of said schoolhouse constituted a fund which should have been used by the defendants in the erection of another school building; but the defendants desire to pay off the bonds, which are a burden only on the territory that comprised the Reidsville school district at the time of the issuance of said bonds, and propose that after said bonds have been bought in or paid off to seek to create a new issue of bonds which will be a burden on the property of your petitioners and the other residents of the territory that was added to said Reidsville school district as hereinbefore set forth." Petitioners did not wish to be consolidated with the Reidsville district, and the great majority of the citizens taken into said district were and are opposed to the consolidation, and therefore do not desire to be saddled with any of the debts of the Reidsville district. The treasurer of the board of trustees has never given the bond required of him by law, and until he gives such bond all money belonging to the district should be handled by the county board of education as required by law.

Upon the interlocutory hearing now under review the court considered the sworn answer of the defendant and the petition and the affidavits of the three petitioners in support of the allegations of the petition. The judge set aside a previous temporary restraining order and refused to enjoin the defendants as prayed for in the petition. To this judgment the petitioners excepted. The bill of exceptions presents the following specific assignments of error: (1) The fund received from the insurance company in settlement of the loss caused by the burning of the schoolhouse constitutes a trust fund to be held and used by the defendants as trustees for the purpose of rebuilding the schoolhouse, and for no other purpose; and the judge erred in refusing to enjoin the defendants from using said fund to pay the indebtedness of the district. (2) It appears that a tax had been levied on the property of the district for the purpose of retiring the bonds as they matured, and the effort to retire said bonds before maturity with money derived from other sources is contrary to law. (3) The fund received from the insurance company in settlement of the loss by fire is a trust fund in the hands of the trustees for the benefit of the citizens of the entire district, whereas the debts which the defendants are seeking to pay are debts for which a portion of the district is not liable and for the payment of which no tax can be levied;

and to permit the defendant to take money belonging to the entire district and pay off debts for which only a portion of the district is liable is contrary to law, equity, and the principles of justice. (4) It affirmatively appears that the treasurer of the district is not under bond as required by section 121 of the Code of School Laws of 1919, and the trustees are not permitted by law to receive or pay out money for any purpose unless the treasurer of the board of trustees has given bond; and the court erred in refusing to enjoin the defendants upon this ground.

We are of the opinion that the first assignment of error is sustained by the record. There is no denial that certain sums of money have been paid to the Tattnall Bank and to other parties from the proceeds of the fund collected from the insurance company in compensation for the loss sustained by the burning of the Reidsville school building. It is strongly urged by able counsel for the defendants that the sum of $21,000 resulting from the removal and destruction of the school building can properly be used by the trustees of the Reidsville school district in discharging any proper and just obligation of that district. We can not concur in that argument, but are constrained to hold that the proceeds accruing from the destruction of the building, whether consisting of insurance or any salvage that might have been saved from the building, is by law placed in special trust of the trustees of the school district for the sole purpose of replacing a school building for that school district, either upon the site where the building formerly stood or some other site purchased by the board of trustees as the location of a new school building. The controlling question in this case is whether the trustees of a school district have the right to use funds derived from insurance on a burned school building in paying the bonded indebtedness and other indebtedness of the district, or must use such funds to replace the burned building. So far as our knowledge or research extends, the precise question seems never to have been decided by the courts of Georgia. There is no statute which specifically refers to funds received from insurance on *burned* school buildings. But it is stated generally in the Code of School Laws of 1919, section 114, how the proceeds of bonds are to be held and used, this being the caption of that section (Ga. L. 1919, pp. 288, 347, sec. 144). It is declared: "Should bonds be issued and sold, the proceeds shall be turned over

to the board of trustees or board of education, in trust for the purpose of erecting a school building or buildings which said board of trustees or board of education may deem suitable. Said board of trustees, or board of education, is authorized to remove, sell, or otherwise dispose of old buildings, or buildings and grounds, and select a new site and erect a new building thereon, and add to the proceeds from the sale of bonds any other proceeds which may come from disposition of building or buildings and site, or from donations or otherwise, all to be held in trust to be used for the purpose aforesaid." It will be noted that the words "board of trustees" refer to district schools, and the words "board of education" to the county board; and that where bonds are issued and the building is removed, all funds coming either from the building or otherwise are "all to be held in trust to be used for the purpose aforesaid," which is "the purpose of erecting a school building or buildings." Clearly, under the spirit of this enactment, which is designed to prevent the proceeds of a school building, no matter how it may be removed, from being dissipated or diverted to other purposes than that of building another schoolhouse, we are authorized to hold that the building was as effectually removed by fire as if it had been moved by order of the board of trustees. In consequence of the protection afforded by the insurance policy, the removal of the school building by fire netted the board of trustees $21,000, and this $21,000, under the provisions governing the issuance of bonds, can only be devoted to the construction of another schoolhouse for the same uses as that destroyed by fire. To hold otherwise would be in some instances to subject a school district to the hazard of not securing a new schoolhouse at all, which might force upon the citizens of a school district many inconveniences and great deterioration of their school facilities. Boards of trustees have only limited authority in the use of school funds. To acquire authority there must generally be express conference. This court held, in *Powell* v. *Bainbridge State Bank*, 161 *Ga.* 855 (132 S. E. 60), that boards of trustees of school districts are without authority to borrow money to pay teachers, and if they do it they can not legally use money coming into their hands from any source for the purpose of paying the notes given for borrowed money. The ruling above stated is controlling of the case, and the further exceptions referred to in the statement of facts need not be elaborated.

The court erred in refusing to restrain the board of trustees as prayed.

*Judgment reversed. All the Justices concur, except Hines, J., disqualified.*

ATKINSON, J., concurs in the judgment of reversal. The money collected from insurance on the building was a trust fund, which could have been applied to erection of a new building or retirement of the bonds, but not to payment of other debts or expenses of the schools.